UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **LEVOY BROCK,** | |
| **Plaintiff,** | |
| *vs.* | CAUSE NO. 1:13-cv-759-RLY-DKL |
| **CAROLYN W. COLVIN, Commissioner of Social Security,** | |
| **Defendant.** | |

**REPORT AND RECOMMENDATION**

Plaintiff Levoy Brock applied for a declaration of a period of disability, an award of disability insurance benefits, and an award of supplemental security income disability benefits. The defendant Commissioner of Social Security finally denied his applications and he filed this action for judicial review. The district judge referred the matter to this magistrate judge for submission of a report and recommendation under 28 U.S.C. § 636. *Entry* [doc. 28]. For the reasons explained below, this magistrate judge recommends that the denials be reversed and the case remanded to the Commissioner for further proceedings.

**Standards**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a

1

preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 905. A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot,

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.@ 42 U.S.C. ' 1382c(a)(3)(B). The combined effect of all of an applicant=s impairments shall be considered throughout the disability determination process. 42 U.S.C. ' 423(a)(3)(G).

To be eligible for child insurance benefits, a claimant over the age of 18 must show that, at the time of filing his application, he was unmarried, he was dependent on an insured parent at the time of his or her death, and he was under a disability that began before the age of twenty-two and continued through the date of application. 42 U.S.C. ' 402(d). In Mr. Davis=s case, that means that he must show that he was under a disability from at least May 12, 2005 (day before his twenty-second birthday) through May 8, 2009 (date of application). Mr. Davis alleges that he became disabled in August 2001.

The Social Security Administration (ASSA@) has implemented these statutory standards in part by prescribing a Afive-step sequential evaluation process@ for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant=s impairments are not severe, then she is not disabled. A severe impairment is one that Asignificantly limits [a claimant=s] physical or mental ability to do basic work activities.@ Third, if the applicant=s impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of

3

Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of

4

disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Factual and procedural background**

Mr. Brock's applications for disability benefits were denied on initial and reconsideration administrative reviews. (R. 63-66-74, 77-82.) He requested and received a hearing before an ALJ in November 2011, during which he was represented by counsel (not his current counsel) and he and a vocational expert testified. (R. 26-62.) In January 2012, the ALJ denied his applications, (R. 9-25), and the Commissioner's Appeals Council denied Mr. Brock's request for review, (R. 1-5), rendering the ALJ's findings and reasons for denial the one that the Court reviews.

At the time of his hearing, Mr. Brock was forty-six years old. He sustained an injury to his lower back in the late 1980s and had spinal surgery in 1987 (a hemilaminectomy and discectomy), when he was 21 years old. He alleged that he received little relief from the surgery and that, since then, his back pain has been chronic and getting worse. He currently takes pain medications and uses a TENS unit.[2] He has received treatment from the Veterans Administration for his back pain since 1995, including epidural steroid injections, pain management, and the TENS unit. He began using a cane, which he reported was prescribed to him, and he reported that he uses it

---

[2] A TENS unit is a small, battery-powered device worn by a patient which sends low-voltage electrical current through two electrodes to the skin at the location of the patient's pain.

about 80 to 90% of the time to help him with balance issues. Further spinal surgery has not been discussed by his treatment providers. He also has a ganglion cyst in his left ankle which requires regular draining and which he reports causes daily pain in the ankle.

In August 2007, Mr. Brock was diagnosed with failed back syndrome, degenerative disc disease, and facet[3] arthritis. In September 2007, he was found to have minor annular (ring shaped[4]) disc bulge at L4-5[5], degenerative retrolisthesis[6] at L5-S1, facet arthropathy[7], moderate bilateral foraminal[8] stenosis[9] at both levels (L4-5 and L5-S1). In May 2011, MRIs showed L4-5 and L5-S1 disc bulging, facet hypertrophy[10], and moderate bilateral foraminal narrowing. The MRIs also showed additional degeneration in form of minor disc bulge and facet hypertrophy at L3-4. The MRIs showed no significant spinal stenosis.

---

[3] Facets are the small smooth surfaces of a vertebra which form a joint with similar facets on an adjacent vertebra. J. E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* at F-2 (Rel. 47, Oct. 2013).

[4] *Attorneys' Dict. of Medicine* at A-381.

[5] Between the fourth and fifth lumbar vertebrae.

[6] A backward slippage of one vertebra above the adjacent lower vertebra, usually the L5 vertebra over the S1 vertebra, to a lesser extent than a "dislocation." *Attorneys' Dict. of Medicine* at S-262; Wikipedia "retrolisthesis", http://en.wikipedia.org/wiki/Retrolisthesis (last visited on August 2, 2014).

[7] "Any disease of a joint or of joints." *Attorneys' Dict. of Medicine* at A-542.

[8] Pertaining to a foramen, an opening into or a passage through a bone. *Attorneys' Dict. of Medicine* at F-149 and F-152.

[9] "The abnormal narrowing of a body passage, opening, canal, or duct. It is usually due to an overgrowth or shrinkage of the tissue around it . . . ." *Attorneys' Dict. of Medicine* at S-292.

[10] "An abnormal enlargement of a part or an organ due to an increase in the size of its constituent cells. Hypertrophy is usually a compensating mechanism, to enable the organ to perform more work than its normal structure would allow." *Attorneys' Dict. of Medicine* at H-258.

Examinations performed in August 2007 showed a positive straight-leg raise test and a decreased lumbar range of motion. In October 2009, EMGs of Mr. Brock's left leg showed symptoms attributable to chronic left radiculopathy of the S1 nerve root, which was consistent with left-side neuropathy. At an examination in April 2011, Mr. Brock complained of numbness and weakness in his left leg and significant instability that was causing him to fall on occasion but the physical examination was within normal limits.

Mr. Brock complains of sciatica (pain down the path of the sciatic nerve in the lower back, radiating to the hips, buttocks, and down the legs) in his back and left leg, paresthesia in the same leg (tingling, burning, pricking sensations). He testified that he can stand for about thirty minutes and walk for perhaps two blocks, before experiencing pain in his back and ankle. He also alleges difficulty bending over. He has also complained of instability causing him to fall.

Mr. Brock was employed until June 2010, last working as a warehouse worker. That job was temporary and he stopped working that job because the "program ran out," not because of his alleged impairments. He testified that has looked for and applied for work since June 2010, as a machine operator and janitor, for example, and would have taken the jobs had they been offered. After first stating that he thought he might have been able to perform the jobs, he stated that he did not believe that he would have been able to perform them.

At step one, the ALJ found that Mr. Brock had not engaged in substantial gainful activity since his alleged disability-onset date of June 3, 2010. At step two, the ALJ found that Mr. Brock has severe impairments of lumbar degenerative disc disease, status post laminectomy, left sciatica, and left-ankle ganglion. At step three, the ALJ found that none of his impairments, singly or in combination, met or medically equaled any of the conditions in the listing of impairments. The ALJ stated that he examined listing category 1.00, musculoskeletal system, specifically listings 1.02, major dysfunction of a joint(s) due to any cause, and 1.04, disorders of the spine.

For the purposes of steps 4 and 5, the ALJ determined Mr. Brock's RFC. He found that Mr. Brock had the RFC for light work except for certain postural limitations (cannot climb ladders, ropes, or scaffolds, and can perform other postural movements only occasionally) and environmental restrictions (avoid concentrated exposure to temperatures, slippery, or uneven surfaces and hazards). The ALJ found that Mr. Brock's descriptions of the severity of his symptoms and their resulting functional limitations were credible only to the extent of his RFC limitations. At step four, the ALJ found that Mr. Brock's RFC allowed him to perform his past relevant jobs of warehouse worker, grounds laborer, machine feeder, machine operate, and collections clerk. This finding meant that Mr. Brock was not disabled, but the ALJ also proceeded to make a step-five determination. He relied on the vocational expert's testimony about the numbers of jobs existing for a person with his found RFC and Mr. Brock's age, education, and skills to

find that there are a significant number of jobs in the national economy that Mr. Brock can perform. Therefore, the ALJ found that Mr. Brock was not disabled under steps four and five.

## Discussion

Mr. Brock makes four arguments against the ALJ's decision.

### 1. Step-three determination.

The ALJ's step-three findings consisted of the following:

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) 404.1525, 404.1526, 416.925 and 416.926).**

In so concluding, I have appropriately evaluated medical and other evidence pertaining to the claimant's medically determinable impairments in conjunction with all the relevant severity criteria contained within *1.00 Musculoskeletal System* (including listings *1.02 Major dysfunction of a joint(s) (due to any cause)* and *1.04 Disorders of the spine)*.

The claimant's impairments are "severe" within the meaning of the Regulations, but they do not meet or medically equal any of the listed impairments. I have reviewed the medical evidence of record in its entirety and find that the claimant's impairment[s] do not meet or equal the level of severity set forth in any of the listed impairments.

(R. 14-15.) This "finding" can only be described as merely a statement and restatement of the ALJ's step-three conclusion; it cannot even be described as "perfunctory." There is no discussion of the evidence compared to the criteria of either listing 1.02 or 1.04 or even, simply, an identification of which criteria that the ALJ found were not met or equaled. This is not a case where the ALJ's evaluation of the criteria can be discerned later in his

decision. The ALJ has clearly failed to adequately articulate his evaluation of his step-three determination.

Mr. Brock argues that the evidence of record proves that the criteria of listing 1.04A has been met or equaled:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A. Mr. Brock cites evidence showing that he has been diagnosed with a herniated disc (herniated nucleus pulposus) and, as the ALJ noted (summarized above), Mr. Brock has been diagnosed with spinal stenosis, degenerative disc disease, and facet arthritis, all findings specifically included in the diagnostic criteria of listing 1.04. Mr. Brock also cites evidence in the record showing displacement of the left S1 nerve root, probably causing radiculopathy. (R. 519.) The ALJ also noted medical reports showing radiculopathy attributed to the S-1 nerve root. (R. 17, 314-21.) There is also evidence in the record that Mr. Brock has neuro-anatomic distribution of pain consistent with compromise or compression of a nerve root, specifically at S-1; motor loss; reduced lumbar range of motion; sensory loss; and at least

11

one positive straight-leg raising test result. All of this findings are included in the criteria of listing 1.04A.

The Commissioner responds by arguing that the evidence cited by Mr. Brock is out-of-date, pre-dating his alleged onset date, and by citing more recent evidence in the record that she argues shows either the absence of listing 1.04A criteria or inconsistencies in the findings. She argues that this evidence shows that Mr. Brock has failed to carry his burden to show that he satisfies all of the criteria of listing 1.04A.

The problem is that the Commissioner's argument is not the rationale that the ALJ articulated in his decision. As noted, the ALJ gave no rationale for his listings determination and addressed none of the evidence in relation to the listing criteria. It is well-established that courts review ALJs' reasons, not the *post hoc* rationalizations offered by the Commissioner on judicial review. *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) ("But in so doing she violated the *Chenery* doctrine (see *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 63 S.Ct. 454, 87 L.Ed.2d 626 (1943)), which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.").

The *Chenery* doctrine has an exception — the harmless-error doctrine. *Parker*, 597 F.3d at 924; *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003). As it variously has been described, this doctrine holds that a court should not remand a case to the Commissioner if it can predict with great confidence that the result on remand would be the same, if the agency's decision is overwhelmingly supported by the record, or if no reasonable ALJ

would reach a contrary result. *Id.* However, courts must take care that the exception does not swallow the rule: the Court of Appeals for the Seventh Circuit has criticized the Commissioner's lawyers for often heavily relying on evidence not relied on by ALJs and defending the tactic "by invoking an overbroad conception of harmless error." *Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010). This Court observes that the Commissioner's lawyers often support the tactic also by arguing that it is a claimant's burden to prove satisfaction of a listing's criteria. However, while claimants do bear the burden of proof, they must carry that burden before an ALJ, not to a Court on judicial review.

In this case, the Court cannot predict "with great confidence" that the result on remand would be the same, that the ALJ's decision is "overwhelmingly" supported by the record, or that no reasonable ALJ would reach a contrary result. Whether the age of Mr. Brock's evidence cited in support of satisfying the listing 1.04A criteria, compared to the more recent evidence cited by the Commissioner, renders it insubstantial is a determination for the ALJ to make; the conclusion is not overwhelmingly apparent to the Court. Further, the Commissioner's arguments that findings regarding certain criteria are inconsistent only reinforces the Court's determination to remand the step-three determination because the task of resolving such inconsistencies in the evidence is for an ALJ to undertake, not the courts.

Because the ALJ failed to articulate any evaluation of the listing 1.04A criteria or any rationale for his step-three finding, the Commissioner's decision must be reversed and Mr. Brock's claims remanded for reconsideration.

**2. Failure to call a medical advisor.**

Mr. Brock argues that the ALJ's step-three decision is unsupported by substantial evidence also because the ALJ failed to obtain an additional medical opinion on the issue of medical equivalence to the listing. He argues that the ALJ cannot rely on the opinions of the state-agency physicians recorded on the Disability Determination and Transmittal forms during initial and reconsideration reviews because those physicians could not have reviewed the April 27, 2011 Veterans Administration physical-therapy record, (R. 481-82), or the report of a June 3, 2011 neurology evaluation, (R. 509). Mr. Brock points to only two facts in these reports of which the state-agency physicians were unaware: the VA physical-therapy clinic issued a cane to him and provided "gait training" with a straight cane. Both of these facts are in the VA record; Mr. Brock identified no fact in the neurology evaluation.

Mr. Brock argues that, if the state-agency physicians had reviewed these two reports, then they "[p]resumably" would have found that he is totally disabled. The Court is troubled that Mr. Brock has offered no explanation why the VA's physical-therapy clinic's issuance of a cane, with training, shows that he medically equaled any criteria of listing 1.04A, but, because the Court reverses and remands this case to the

Commissioner for re-evaluation of the step-three determination on other grounds, the Commissioner will be instructed to consider whether the April 27, 2011 VA record regarding the cane requires a supplemental medical opinion on equivalence. Because Mr. Brock did not identify any relevant fact in the June 2011 neurological evaluation, the Commissioner will not be instructed to consider that report in her re-evaluation, but she is free to do so if she chooses.

### 3. Credibility determination.

Mr. Brock argues that the ALJ's credibility determination is not supported by substantial evidence and is infected with legal error because **(1)** it is contrary to the evidence because the ALJ ignored or misinterpreted evidence which proved the claimant was totally disabled, **(2)** the ALJ used the boilerplate template and "reverse procedure" that has been criticized by the Seventh Circuit, and **(3)** the credibility finding is perfunctory, failing to cite any evidence in support of its conclusion.

Mr. Brock's first argument is only conclusory. He fails to identify the evidence regarding credibility that the ALJ ignored or misinterpreted and to explain how it is proves that the ALJ's credibility determination is erroneous when compared to the evidence that the ALJ did cite and discuss and his rationale. Mr. Brock merely refers to "the evidence cited above" that proved that he was totally disabled and, thus, corroborated his symptom and limitations allegations. The Court will not make his argument for him.

15

Second, while some decisions of the Seventh Circuit have criticized ALJs' use of boilerplate language and the "backwards" structure of their credibility articulations — leading with the conclusion, followed by evaluation of the evidence and rationale — the Court has also stated that the use of boilerplate alone is not erroneous as long as the ALJ otherwise addresses the evidence and explains his evaluation. *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). In this case, the ALJ devoted four pages of his decision to an extensive analysis of the evidence as it related to Mr. Brock's credibility, including the ALJ's evaluation of the credibility factors provided in S.S.R. 96-7p. (R. 15-19.) Mr. Brock has not shown that the ALJ committed error. The ALJ's extensive discussion of the evidence and credibility factors also shows the error in Mr. Brock's third argument. The ALJ's discussion was far from perfunctory.

**4. Steps four and five findings.**

Finally, Mr. Brock argues that substantial evidence does not support the ALJ's step-four or step-five findings because his "[RFC] assessment did not accurately describe the claimant's impairments." Mr. Brock fleshes-out this statement: "The ALJ impermissibly failed to account for the claimant's chronic pain disorder which rendered him unable to perform any full time employment. As discussed above the ALJ refused to acknowledge evidence which proved his spinal impairments were medically equivalent to Listing 1.04-A." Beyond simply reiterating his listings argument, the Court

does not discern any argument here. Because he has failed to factually or legally develop an argument, Mr. Brock not shown error in the ALJ's steps four and five findings.

## Conclusion

This magistrate judge **RECOMMENDS** that the Commissioner's decision denying Mr. Brock's applications for disability benefits be **REVERSED** and **REMANDED** for further proceedings. Specifically, the Commissioner must reconsider the ALJ's step-three listings determination as it relates to listing 1.04A because the ALJ failed to articulate any evaluation of that listing's criteria against the evidence of record. The Commissioner shall also consider (and articulate her consideration of) whether the April 27, 2011 VA physical-therapy note regarding issuance of a cane and training in its use warrants obtaining a supplemental medical opinion on medical equivalence to listing 1.04A.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir.

2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 08/04/2014

_____
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.